IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| LAURA HILLIS,<br><br>        Plaintiff,<br><br>  vs.<br><br>NANCY BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>        Defendant. | CV 17-16-GF-JTJ<br><br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

## I.  SYNOPSIS

Laura Hillis (Ms. Hillis) brings this action under 42 U.S.C. § 405(g) seeking

judicial review of the decision of the Commissioner of the Social Security

Administration (Commissioner) denying her application for disability benefits

under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401-433.  Ms.

Hillis filed an application for disability insurance benefits March 19, 2013, and an

application for supplemental security income benefits on March 28, 2013.  (Doc.

13 at 164, 166).  Ms. Hillis alleges that the disability entitling her to the benefits

1

she seeks began on October 20, 2012.  (*Id.*)  Ms. Hillis's claims were initially

denied on May 23, 2013. (*Id*. at 115-17).  Ms. Hillis timely filed a request for

reconsideration and, on October 24, 2013, her claims were once again denied.  (*Id.*

at 119-22).

A hearing before an Administrative Law Judge (ALJ) was held on

September 25, 2014 at which Ms. Hillis appeared by video from Great Falls,

Montana.  (*Id.* at 36-78).  The ALJ determined that although Ms. Hillis had severe

impairments she nevertheless retained the residual functional capacity to perform

past relevant work as a physician's assistant and other jobs that exist in significant

numbers in the national economy and was therefore not disabled within the

meaning of the Act.  (*Id.* at 20-30).

On April 10, 2015, Ms. Hillis timely requested that the Social Security

Administration review the ALJ's decision.  (*Id.* at 11-16).  On December 20, 2016,

the Appeals Council for the Social Security Administration denied Ms. Hillis's

request for review making the ALJ's decision the Commissioner's final decision.

(*Id.* at 1-6).

Ms. Hillis timely filed a complaint on February 21, 2017, seeking judicial

review of the Commissioner's decision.  (Doc. 2).  The Court has jurisdiction over

this action under 42 U.S.C. § 405(g).  The parties consented to the undersigned

conducting all proceedings in this matter. (Doc. 16). The Great Falls Division of the District of Montana is the proper venue because Ms. Hillis resides in Chouteau County, Montana. (Doc. 2 at 2); 42 U.S.C. 405(g); Local Rule 1.2(c)(2).

Ms. Hillis filed an opening brief on March 12, 2018, requesting that the Court reverse the Commissioner's decision and remand the case to cure the Commissioner's claimed errors. (Doc. 20). The Commissioner filed a response brief on April 12, 2018, and Ms. Hillis filed a reply brief on May 21, 2018. (Docs. 21 and 22). The motion is ripe for decision.

Ms. Hillis, who was born on March 3, 1961, was 51 years old when she filed her application on October 20, 2012. (Doc. 13 at 81).

## II.   STANDARD OF REVIEW

The Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006). Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d

573, 576 (9th Cir. 1988).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Id.* at 1193 (citing *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999)). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (quoting *Edlund*, 253 F.3d at 1156). Where evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. *Thomas v. Barhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). The Court may reject the findings not supported by the record, but it may not substitute its findings for those of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

# III.  BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months"; and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Commissioner of Soc. Sec. Admin*., 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A)-(B)).

The Social Security Administration regulations provide a five-step sequential evaluation process for determining when a claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920.  The five steps of the inquiry are:

1. Is the claimant presently working in a substantially gainful activity?  If so, the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe?  If so, proceed to step three.  If not, the claimant is not disabled.  *See* 20 C.F.R. §§

404.1520(c), 416.920(c).

3.      Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.      Is the claimant able to do any work that he or he has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5.      Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Id*. at 954. The claimant bears the burden of proof for steps one through four, and the Commissioner bears the burden of proof for step five. *Id.*

## IV. BACKGROUND

### A.    Ms. Hillis's hearing testimony

On September 25, 2014, Ms. Hillis appeared without counsel for a hearing in front of ALJ Lloyd E. Hartford in Billings, Montana. (Doc. 13 at 38). Ms. Hillis testified that she quit her job as nurse practitioner on or about October 20, 2012, less than a year after she was involved in the rear-ended automobile collision causing her "chronic whiplash and migraine." (*Id.* at 45-46). After the accident and quitting her job, Ms. Hillis gained roughly fifty pounds because of her "completely sedentary" lifestyle, decreased activity level, and poor eating habits. (*Id.* at 44-47). Ms. Hillis also has not worked since quitting her job in 2012. (*Id.* at 46).

In addition to the injuries suffered from the automobile accident, Ms. Hillis also claims that she is "disabled due to lymphoma, fibromyalgia, degenerative disc disease, intractable migraine -- intractable headaches with migraines." (*Id.*) Additional impairments that also interfere with Ms. Hillis's ability to work include "major depressive disorder, anxiety disorder, social isolation, chronic pain with widespread neuropathy, chronic fatigue syndrome, chronic nausea, sleep disorder, difficulty concentrating, memory impairment, autoimmune hypothyrodism, [and] esophageal spasm with chest pain." (*Id.* at 47-48). According to Ms. Hillis's nurse practitioner, Angel Johnson ("Ms. Johnson") diagnosed her with all of the previously listed conditions. (*Id.* at 49). Additional medical care received by Ms. Hillis includes one visit with Dr. Galvas at the Integrative Medical Clinic, but she primarily saw physician assistant Rod Lutes at the clinic for cervicogenic pain, and was later sent to Benefits Integrative for a series of neck injections. (*Id.* at 49).

The conditions Ms. Hillis is claiming render her unable to work are currently being treated by Ms. Johnson: who also filled out Ms. Hillis "ability to do worked related activities form" because she is the one that told Ms. Hillis she is disabled and has limitations. (*Id.* at 49-50). However, Ms. Hillis does not have a statement from a doctor that finds she is disabled or confirming her conditions. (*Id.* at 49-51).

Ms. Hillis's day to day life begins when she gets out of bed around 6:30 a.m.

and ends when she goes back to bed between 5:00-10:00 p.m. (*Id.* at 51). Ms. Hillis currently lives in low income housing, receives $187.00 in food stamps, gets help from her daughter, and sold everything she had of value to get through the last few years. (*Id.*) Other than low income housing and food stamps, Ms. Hillis does not get any other aid. (*Id.* at 52).

Currently, Ms. Hillis has a vehicle and is able to drive herself around. (*Id.*) In September, 2014, Ms. Hillis drove herself from Big Sandy, Montana, where she resides, to Missoula, Montana, to visit her sons. (*Id.*) However, the drive was difficult because Ms. Hillis said she had to stop every thirty to forty-five minutes to get out and stretch, which made the trip more than six hours compared to a normal four hour trip. (*Id.* at 53). In addition to needing to stretch, Ms. Hillis also had the drivers seat all the way forward and the steering wheel in the lowest position because she has numbness and tingling in her arms, wrists, hands, and fingers. (*Id.*) Ms. Hillis believes the numbness and tingling is caused by "nerve root compression" from her degenerative neck resulting from neuropathy. (*Id.* at 54).

The neuropathy may have occurred from Ms. Hillis's chemotherapy for lymphoma in 2004, which also caused the numbness and tingling back in 2004. (*Id.* at 54). Ms. Hillis said she had an exercise routine that helped her manage the neuropathy and fibromyalgia, but once the automobile collision occurred she could

no longer exercise.  (*Id.* at 55-56).  As a result of the automobile accident the prior injuries became worse, but no surgeries were ever done, only steroid and collagen injections into her neck.  (*Id.* at 56-57).  However, surgery options were raised by the doctors after the automobile accident, but the risk of increased pain prevented Ms. Hillis from opting for surgery at the time.  (*Id.* at 57).

In an affidavit provided to the ALJ, Ms. Hillis's daughter claims her mother suffers from mental impairments and memory loss.  (*Id.*)  Ms. Hillis, however, has not been treated for mental illness, but she was on antidepressants up until she ran out of money.  (*Id.* at 58).  Although she is still able to get medications when she borrows money from her children.  (*Id.* at 68).

Ms. Hillis says she struggles to lift and carry things because she never knows if she will drop them because she gets "electrical stimuli or sensation" in her hands and arms.  (*Id.* at 59).  Ms. Hillis estimates she could carry "a gallon of milk," but that is as much as she would want to attempt to lift due the fear of dropping whatever she was carrying.  (*Id.* at 60).

Ms. Hillis stated during her testimony she felt uncomfortable just sitting in the chair because of the pain in her neck, a headache, sore arms, numb hands and feet, and back pain.  (*Id.* at 61).  The alleged cause of the numbness is idiopathic neuropathy, which was diagnosed by Ms. Johnson.  (*Id.*)  Because sitting is a problem, Ms. Hillis

says she often spends most of her day lying down.  (*Id.* at 63).  For example, Ms. Hillis stated that if she gets out of bed by six or six-thirty in the morning she will be back in bed by nine or nine-thirty to take a nap for three to five hours.  (*Id.*)  According Ms. Johnson, Ms. Hillis can "never reach overhead, reach in any direction, and . . .can never handle, finger, feel, or push and pull objects with either hand." (*Id.*)  If Ms. Hillis does do those movements, she has increased tingling, numbness, and sensation because of the automobile collision.  (*Id.*)

Ms. Johnson also stated Ms. Hillis "can never climb stairs and ramps, ladders or scaffolds [and] can never balance, stoop, kneel, crouch, or crawl." (*Id.* at 64).  If Ms. Hillis does attempt those activities, she gets dizzy, lightheaded, and struggles with her balance causing her to frequently stumble and fall due to the neuropathy in her feet and legs.  (*Id.*)

During the hearing, Ms. Hillis stated she had one of her daily headaches, which was "a 3 to 4 on a scale of 1 to 10" for pain.  (*Id.*)  Ms. Hillis complains of chronic headaches, which increase in pain and turn into migraines.  (*Id.*)  The headaches have occurred for as long as Ms. Hillis can remember, which dates back to her days in Illinois, where she is originally from.  (*Id.* at 65).  Ms. Hillis does take medication for the migraines when she has money or can borrow money from her children to buy it. (*Id.* at 65-68).  Ms. Hillis's medications cause her to become drowsy, drop her blood

pressure, and makes her "feel funny in the head." (*Id.* at 66).

Ms. Hillis testified she is still able to perform daily activities such as grocery shopping, cleaning her home, performing personal hygiene, and taking care of household requirements. (*Id.* at 68). Until recently, Ms Hillis was also keeping current with her credit accounts, but she ran out of things to sell to pay bills. (*Id.* at 68-69).

Finally, Ms. Hillis discussed her recent trip to Illinois last fall to see her granddaughter. (*Id.* at 71). Ms. Hillis sold some of her belongings in order to purchase a plane ticket to make the trip. (*Id.*) Ms. Hillis also told the ALJ she drove herself from Big Sandy, Montana, to Great Falls, Montana for the hearing, which is "about 85 miles." (*Id.* at 72).

### B. ALJ's determination

At step one, the ALJ determined that Ms. Hillis has not engaged in substantial gainful activity since October 20, 2012, the alleged onset date of her disability. (*Id.* at 22). At step two, the ALJ found that Ms. Hillis has the following severe impairments: fibromyalgia, degenerative disc disease, migraines and lymphona. (*Id.* at 23).

At step three, the ALJ found that Ms. Hillis did not have an impairment, or combination of impairments, that met or was medically equal to one of the listed

11

impairments.  (*Id*. at 24).

Before considering step four, the ALJ assessed Ms. Hillis as having the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 1567(a) which include standing and walking for up to 6 hours out of an 8 hour work day. Sitting for up to 6 hours out of an 8 hour work day.  Lifting and carrying up to 10 pounds frequently and 20 pounds occasionally.  She needs to alternate sitting and standing/walking as needed for back pain and allowed by normal breaks.  She is limited to frequent climbing of ramps and stairs, balancing, kneeling and crouching and occasional climbing of ladders, ropes and scaffolds, stooping and crawling.  She is also limited to occasional bilateral overhead reaching, frequent bilateral handling and should avoid concentrated exposure to noise vibration and even moderate exposure to hazards such as machinery and heights.  (*Id.* at 25).

At step four, the ALJ determined that with her RFC Ms. Hillis is capable of performing past relevant work as a physician's assistant.   (*Id.* at 29).

At step five, the ALJ determined that Ms. Hillis has not been under a disability as defined in the Social Security Act, from October 20, 2012, through the date of his February 4, 2015 decision.  (*Id.* at 30).


### C.    Ms. Hillis's Position

Ms. Hillis argues the Court should reverse the Commissioner's decision and order the Commissioner to pay her SSI benefits because:

1. The ALJ erred at step two in determining that her depression was not a severe impairment.

2. The ALJ's erred at step three in determining that her fibromyalgia did not meet or equal a listed impairment.

3. The ALJ erred in discounting the credibility of her symptom testimony by failing to identify clear and convincing reasons for doing so.

4. The ALJ erred in did determining that statements from Angelica Johnson, FNP when he found that they were entitled "little" weight.

5. The ALJ erred in failing to include all of her limitations in assessing her residual functional capacity.

**D.     The Commissioner's Position**

The Commissioner argues that the Court should enter summary judgment in her favor because:

1. The ALJ properly determined at step two that Ms. Hillis's depression was not a severe impairment.

2. The ALJ properly determined at step three that Ms. Hillis's

fibromyalgia did not meet or equal a listed impairment.

3.     The ALJ properly discounted Ms. Hillis's symptom testimony where

       he identified clear and convincing reasons for doing so.

4.     The ALJ properly evaluated the statements from Angelica Johnson,

       FNP, as being entitled to "little" weight because he gave germane

       reasons for doing so.

5.     The ALJ properly assessed Mr. Hillis's residual function capacity.

## V.  ANALYSIS

### A.     Step Two - Severe Impairment

#### 1.     Legal standards

Step two of the five-step sequential inquiry imposes a *de minimis* screening

device to dispose of groundless claims.  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th

Cir. 1996).  The Social Security Regulations and Rulings, as well as case law applying

them, discuss the step two severity determination in terms of what is "not severe." *Id.*

An impairment is found "not severe" at this step when medical evidence establishes

only a slight abnormality or a combination of slight abnormalities which would have

no more than a minimal effect on an individual's ability to work.  *Id.*  An impairment

is not severe if it does not significantly limit [the claimant's] physical ability to do

basic work activities." *Id.* at 1290.  Basic work activities are "abilities and aptitudes

necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling." *Id.* The claimant bears the burden of establishing the existence of a severe impairment. *Bowen v. Eckert*, 482 U.S. 137, 146 (1987).

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen*, 482 U.S. at 145; 20 C.F.R. §§ 404.1520(c), 416.920(c). To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs-the results of 'medically acceptable clinical diagnostic techniques,' such as tests-as well as symptoms," of a claimant's own perception or description of his physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). A claimant's own statement of symptoms alone is not enough to establish a medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 416.908.

An ALJ's failure to determine that an impairment is severe at step two is harmless error where the ALJ proceeds to the next step and where the ALJ considers the symptoms and limitations from all of the claimant's medically determinable impairments in the RFC assessment. *Gray v. Commissioner of Soc. Sec. Admin.*, 365 Fed. Appx. 60, 61 (9th Cir. 2010) (citing *Burch v. Barnhart*, 400 F.3d 676, 682 (9th

Cir. 2005)).

##### 2.    Analysis

Ms. Hillis claims to have depression to the extent that it is a medically determinable severe impairment. The ALJ determined that Ms. Hillis's claimed depression is not medically determinable impairment. (Doc. 13 at 24). In reaching this determination, the ALJ initially noted that the only diagnosis of Mr. Hillis suffering from "moderate major depression" came from Angelica Johnson, a nurse practitioner, as a result of a January 14, 2014, examination. (*Id*. at 23). The ALJ then reviewed additional medical evidence in the record, such as Ms. Hillis denying suicidal or homicidal ideation; being able to maintain self care; having good insight and judgment; not being prescribed any medication or being referred for ongoing mental health treatment by Ms. Johnson; being alert, cooperative, with judgment and cognition in tact and an appropriate mood and affect. (*Id*.)

Ms. Hillis appears to argue that the ALJ erred because there was insufficient evidence in the record to make a determination about her claimed mental impairment. (Doc. 20-1 at 30-31). In support of this argument, Ms. Hillis references a statement from consultative examiner Marsha McFarland, Ph.D., that "there is insufficient evidence to substantiate the presence of a disorder." (Doc. 13 at 85). Rather than supporting Ms. Hillis's argument, Dr. McFarland's statement supports the ALJ's

determination that the evidence failed to establish a medically determinable impairment.

Ms. Hillis also appears to argue that the ALJ should have ordered consultative examination to determined whether her claimed depression was medically determinable. However, the "ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001). Here, the ALJ had sufficient evidence upon which to evaluate Ms. Hillis's claimed depression and determine whether it was medically determinable.

Substantial evidence supports the ALJ's determination that Ms. Hillis's claimed depression was not medically determinable and the ALJ did not commit legal error in the manner in which he evaluated her claimed depression.

## B.    Step Three - Meets or Equals a Listed Impairment

### 1.    Legal Standards

At step three, the ALJ considers whether one or more of a claimant's impairments meet or medically equal an impairment listed in Appendix 1 to Subpart P of the regulations. "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532

17

(1990) (emphasis in original; citations omitted).  The claimant bears the burden of proof at step three.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  A mere diagnosis does not suffice to establish disability.  *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).  To meet a listing, an impairment "must meet all of the specified medical criteria."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).  "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment[.]"  *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); § 416.926 (a); *see also Sullivan*, 493 U.S. at 531 (to establish equivalency, claimant "must present medical findings equal in severity to all the criteria" for the listing).  To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim.  *Tackett v. Apfel*, 190 F.3d 1094, 1099 (9th Cir. 1999).  To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment.  *Id.* (*citing* 20 C.F.R. § 404.1526).


2.    **Analysis**

The ALJ determined that Ms. Hillis's impairments of obesity, fibromyalgia (FM), and migraine headaches did not meet or medically equal a listed impairment. (Doc. 13 at 24-25). Ms. Hillis argues in her reply brief that the ALJ erred because FM is a listed impairment and the ALJ stated that it was not and that the ALJ's explanation of why her FM failed to meet or equal a listed impairment was too brief to adequately address her FM because "it affects every system so every different section needs evaluated." (Doc. 22 at 16).

Initially, the ALJ correctly stated that FM is not a listed impairment. SSR 12-2p specifically provides "FM cannot meet a listing in appendix 1 because FM is not a listed impairment."

Next, the ALJ's discussion of Ms. Hillis's FM not meeting a listing was indeed brief, a fact the Commissioner concedes. However, Ms. Hillis offered no theory, plausible or otherwise, as to how her FM, alone or in combination with her other severe impairments, meets or equals a listing. For that matter, Ms. Hillis does not identify any specific listing she believes her FM alone, or in combination with other severe impairments, meets or equals. Lacking such a theory, Ms. Hillis has failed to establish that the ALJ erred in providing a brief discussion of why her FM failed to meet or equal a listing. *Burch v. Barnhart,* 400 F.3d 676, (9th Cir. 2001).

C.    **Credibility**

### 1. Legal standards

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). In this analysis, the claimant is not required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Nor must a claimant produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison,* 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014-1015 (citing *Smolen*, 80 F.3d at 1281); *see also Robbins v. Social Sec. Admin*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not

credible by making specific findings as to credibility and stating clear and convincing reasons for each"). This is not an easy requirement to meet: "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison,* 759 F.3d at 1015 (citing *Moore v. Commissioner of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). At the same time, the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Id.* (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). The ALJ must identify which testimony she found not credible and why. *Id.* The ALJ's credibility determination must set forth findings sufficiently specific to permit the court to concluded that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or

between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Id.* (citing *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

### 2.    Analysis

The ALJ initially explained that he discounted Ms. Hillis's statements about having disabling symptoms because "the treatment records indicate that the claimant's symptomology has been effectively treated with non-aggressive, medical approaches." (Doc. 13 at 26). An ALJ may discount a claimant's statements where the record reflects that the claimant responds favorably to conservative treatment. *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir.2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

In support of this reason, the ALJ discussed Ms. Hillis's physical therapy treatment, facet and nerve block injections, and stretching provided her with relief from her symptoms and that her symptoms did not return until after she stopped receiving such treatment. (Doc. 13 at 26, 28). A review of the medical evidence

reveals that there is substantial evidence to support the ALJ's determination. (*Id.* at 301-02, 305-11, 320-23, 327, 329, 332, 355, 359-60, 387)

The ALJ further explained that he discounted Ms. Hillis's statements of disabling symptoms because her statements were not compatible with her level of activity. It is legally permissible for an ALJ to discount a claimant's credibility where her subjective complaints area not consistent with her level of activity. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, the ALJ discussed Ms. Hillis's activities that included going to the post office, grocery store and bank; preparing meals; cleaning; doing laundry; driving; shopping several times a week; and meeting her daughter for coffee. (Doc. 13 at 29) A review of the record reveals that there is substantial evidence to support ALJ's determination. (*Id.* at 206-16)

The ALJ also explained that he discounted Ms. Hillis's statements of disabling symptoms because her subjective complaints were not supported by the medical records. (*Id.* at 26-27). Conflict between the claimant's subjective testimony and her medical records is a legal sufficient basis upon which an ALJ may discount the claimant's credibility. *Rollins*, 261 F.3d at 857. The ALJ discussed that Ms. Hillis's medical records consistently indicated that she had full range of motion in her cervical spine; had normal strength in her extremities; had no neurological deficits; had a steady gait; was alert and oriented; was cooperative; maintained good eye contact; had

normal speech; had good insight and judgment; had in tact cognition; and denied suicidal or homicidal ideation. (Doc. 13 at 23, 27). A review of the record reveals that substantial evidence supports the ALJ's determination. (*Id.* at 320, 323, 332, 359-60, 383-93).

Ms. Hillis takes issue with the ALJ weighing and evaluation of the evidence. However, in reviewing an ALJ's decision, the courts are not triers of fact and credibility determinations are the province of the ALJ. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (*citing Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir.1988)). Where, as here, the ALJ has made clear, convincing and specific findings justifying a decision to discount Ms. Hillis's statements, and those findings are supported by substantial evidence in the record, it is not this Court's role to second-guess that decision.

The Court finds that the ALJ's decision to discount Ms. Hillis's credibility regarding her statements about having disabling symptoms is supported by substantial evidence and is not based upon legal error.

### D. Other Sources

#### 1. Legal standard

Only licensed physicians and certain other qualified specialists are considered "[a]cceptable medical sources." 20 C.F.R. § 404.1513(a). Therapists and friends are defined as "other sources," § 404.1513(d), and are not entitled to the same deference.

*Id.* (citing § 404.1527; SSR 06–03p).

For claims like Ms. Hillis's that were filed before March 27, 2017, nurse practitioners are "other sources" as well. § 404.1502(a)(7). An ALJ need only give a germane reason for discrediting the statement of an "other sources." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (*citing Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001)). Inconsistency with medical evidence is one such reason. *Id.*

## 2. Analysis

Ms. Hillis's primary medical provider is nurse practitioner Angelica Johnson. The ALJ considered statement Ms. Johnson made about Ms. Hillis but determined that were entitled to "little weight." (Doc. 13 at 28) The reasons the ALJ gave for doing so were that Ms. Johnson's statements were inconsistent with (1) her own treatment notes that revealed mostly unremarkable mental status examination findings, and (2) Ms. Hillis's own testimony regarding her limitations, which calls into question whether Ms. Johnson correctly interpreted Ms. Hillis's sitting/standing/walking limitations. (*Id.* at 28).

A review of the medical evidence reveals that Ms. Johnson's statements about the disabling extent of Ms. Hillis's symptoms are at odds with her own findings indicating normal functioning on examination consistent with her conservative treatment of Ms. Hillis. (*Id.* at 320, 323, 332, 359, 360, 383, 387). Also, Ms. Hillis

contradicted Ms. Johnson's assessment that she was unable to carry a gallon of milk and she noted that she was unsure that Ms. Johnson had correctly interpreted her ability to sit, stand and walk.  (*Id.* at 282-83).

Therefore, the ALJ did not error in discounting Ms. Johnson's statements because the reasons he gave for discounting Ms. Johnson's statements were germane and were supported by substantial evidence.

### E.    RFC Assessment

#### 1.    Legal standard

The ALJ determines residual functional capacity based upon medical records, physicians' opinions, and the claimant's description of her limitations. 20 C.F.R. §§404.1545(a), 416.945(a)(3). The ALJ should resolve conflicts in the medical record. *Carmickle v. Commissioner of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). A claimant does not establish error at step five by simply restating arguments that the ALJ erred in discounting certain evidence.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1176-77 (9th Cir. 2008).  Furthermore, in assessing a claimant's residual functional capacity, the ALJ is not required to take into account claimed limitations the ALJ found to be incredible or not supported by the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

In determining a claimant's RFC, the Commissioner must consider both the

medical evidence of record, but also "subjective symptoms" such as "fatigue and pain." *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). The ALJ is responsible for determining credibility of subjective evidence, and her findings must "be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

## 2.    Analysis

Ms. Hillis argues that the "assessment of functional capacity should preferably be reported by a physician who has examined the claimant" and, because "Ms. Johnson the PCP (primary care provider) but is not an acceptable medical source so claimant should have been sent for a consultative exam." (Doc. 20-1 at 42). In support of this argument, Ms. Hillis cites to SSR 78-8. (*Id.*) However, SSR 78-8 was rescinded in 1981 and therefore fails to provide a basis upon which to find the ALJ erred in assessing Ms. Hillis's RFC.

The ALJ's decision reveals that he reviewed the medical evidence, considered medical opinions from acceptable medical sources, considered Ms. Hillis's testimony and statements, and statements from other sources, including Ms. Johnson, in assessing her RFC. The ALJ then took into account the limitations he found to be credible and assessed her RFC accordingly. The court determines that the ALJ assessment of Ms. Hillis's RFC is supported by substantial evidence, is consistent

with the medical evidence, includes the limitations the ALJ found to credible and is not based upon legal error.

## VII.  CONCLUSION

The ALJ's determination is supported by substantial evidence in the record and is not based on legal error.  Therefore, Ms. Hillis's motion for summary judgment is denied in all respects.

Therefore, the undersigned issues the following:

### ORDER

1.  The Commissioner's Motion for Summary Judgment is GRANTED.

2.  Ms. Hillis's Motion for Summary Judgment is  DENIED.

DATED this 23rd day of July 2018.

John Johnston
United States Magistrate Judge